UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DEMETRIUS J. WILLIAMSON, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:17-CV-00276-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
|     *Defendant*. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Demetrius J. Williamson ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying him supplemental security income ("SSI"). Each party has moved for judgment [Docs. 16 & 22] and filed supporting briefs [Docs. 17 & 23]. This matter is now ripe. For the reasons stated below, (1) Plaintiff's motion for summary judgment [Doc. 16] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 22] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

**I. ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed his application for SSI on July 29, 2014, alleging disability beginning April 1, 2007 [Doc. 13 ("Tr.") at Page ID # 68]. Plaintiff's claim was denied initially and on reconsideration at the agency level. On April 9, 2015, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held in Chattanooga, Tennessee, on August 11, 2016 (Tr. 24, 188). Plaintiff participated by video from Rome, Georgia (Tr. 11). On November 23,

2016, the ALJ found Plaintiff had not been under a disability as defined in the Social Security Act since the date he applied for SSI[1] (Tr. 19). After the ALJ issued his decision, Plaintiff sought review from the Appeals Council and submitted additional medical records, including a "Pain Evaluation" form and a "Physical Capabilities Evaluation" form from a cardiologist, both dated February 7, 2017 (Tr. 127-33), records from the Harbin Clinic dated April 25, 2002, through August 9, 2016 (Tr. 51-111), and records from Rome City Schools dated January 4, 2007, through November 23, 2016 (Tr. 113-25). The Appeals Council reviewed this additional evidence, but denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). Plaintiff timely filed the instant action [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born January 28, 1989, making him a younger individual on the application date (Tr. 18). He has a General Education Diploma, or GED, and is able to communicate in English (Tr. 18, 29). Plaintiff has worked in fast food and as a dietary aide in a nursing home (Tr. 18, 29).

### B. Medical Records

In his Disability Report, Plaintiff alleged disability due to heart disease, depression, and vision problems (Tr. 263). Plaintiff [Doc. 17 at Page ID # 463-66] and the ALJ (Tr. 13-14, 16-19) each set forth a detailed, factual recitation with regard to Plaintiff's medical record, vocational record, and the hearing testimony. The Commissioner generally adopts the statement of facts set forth by the ALJ, but includes citation to the record throughout her argument [Doc. 23 at Page ID

---

[1] SSI applicants are not entitled to benefits until "the month following the month" that the application is filed, regardless of the date of alleged disability onset. 20 C.F.R. § 416.335.

# 489, 489-99]. While there is no need to summarize the medical records herein, the relevant records have been reviewed.

## C. Hearing Testimony

At the hearing before the ALJ, Plaintiff and a vocational expert ("VE") testified. The transcript of the testimony at the hearing has been reviewed (Tr. 24-43).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration (the "SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that

significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.      The ALJ's Findings**

At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, July 29, 2014 (Tr. 13). At step two, the ALJ found Plaintiff had the following severe impairments: congenital heart disease status post-multiple surgeries, mild exertional dyspnea, and major depressive disorder (Tr. 13). The ALJ found Plaintiff's "decreased vision" was a nonsevere impairment (Tr. 13). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b), with the following additional restrictions:

> The claimant can stand and walk for not more than a total of four

> hours during the workday. The claimant can occasionally climb and crawl as well as frequently stoop, kneel, and crouch. He must avoid extreme heat, cold, and high humidity as well as vibrating equipment and pulmonary irritants such as fumes, odors, dust, and gases. The claimant must work in a non-hazardous environment. He can perform simple, routine, repetitive tasks in a job requiring not more than occasional interaction with coworkers and supervisors and no work with the public.

(Tr. 15). At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a fast food worker and dietary aide (Tr. 18). At step five, however, the ALJ found Plaintiff was capable of performing other types of work, such as advertising material distributor, textile recorder, and shipping and receiving weigher (Tr. 19). These findings led the ALJ to determine Plaintiff has not been under a disability since the date he applied for SSI (Tr. 19).

## IV. ANALYSIS

Plaintiff asserts this matter should be reversed and remanded for an award of benefits or at least for further proceedings. He argues: (1) "The RFC is unsupported by substantial evidence because the ALJ failed to properly evaluate and weigh the opinion of [the] consultative examiner, Dr. Wiener, pursuant to the regulations," and (2) "New and material evidence submitted to the Appeals Council supports a Sentence 6 remand." [Doc. 17 at Page ID # 467, 471].

### A. Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter, upon

5

the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may

not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. The ALJ's Assessment of Dr. Wiener's Opinion

Alice Wiener, Psy. D., performed a psychological consultative exam on August 21, 2014 (Tr. 358). Her "Summary and Prognosis" provides:

> The claimant presents with a reported history of depression and thoughts of suicidal ideation, problems with social interactions and getting along with others and an overall sense of feeling useless and worthless. He has serious medical conditions which he reports he could die [from] at any moment and this causes stress as well.
>
> The claimant reports some problems sleeping because of worry, stress and dreaming of things. His mental status was significant for problems with short term memory. His mood was generally in the normal range with some tearful sad affect typically during discussions of his medical issues. The current assessment and symptoms would support a diagnosis of Major Depressive Disorder, recurrent.
>
> Mr. Williamson presents with adequate social skills but could be limited and precluded in his ability to establish and maintain meaningful and productive relationships with coworkers, supervisors and interact with the general public but may have difficulty due to problems with his medical issues and lower self esteem with interacting with others. His verbal comprehension and

7

> expressive language skills are adequate for normal conversation. He had no difficulty understanding and carrying out simple instructions as evidenced by his ability to follow instructions during the mental status exam and would be capable of completing simple tasks. He could require additional teaching and practice with more complex tasks. His concentration and memory are mildly impaired and would likely interfere with sustained efforts in or with independent completion of work related tasks. His work pace is likely to be slower in part due to his difficulty with memory and depression. His ability to cope with work related stress is felt to be very limited to a moderate degree due to his problems getting along with others and depression. If given funds the claimant would be capable of managing funds in his own best interest. His prognosis for improvement is poor.

(Tr. 361-62).

The ALJ discussed Dr. Wiener's opinion in his decision (Tr. 16-17). He then assigned the opinion "some weight," because Dr. Wiener "examined [Plaintiff] and is a mental health specialist," but declined to more fully credit Dr. Wiener's assessment because "the limitations she identified are vague." (Tr. 17).

In considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). The opinions of one-time consultative examiners are not subject to the so-called "treating physician rule," which requires ALJs to give greater deference to the opinions

of treating physicians.[2] Although an ALJ is not bound by findings made by non-treating physicians, the ALJ usually must evaluate a consultative examiner's opinion using the relevant factors in 20 C.F.R. 416.927(c)(1)-(6), the same factors used to analyze the opinion of a treating physician. *See id.* 416.927(c). These factors include whether an examination was performed, the consistency of the opinion with the record as a whole, how well the opinion is supported, the specialization of the medical professional, and other factors such as how well the medical professional understands the disability rules and their familiarity with the claimant's medical record. *Id.* "Unless a treating source's opinion is given controlling weight," the ALJ "must explain in the decision the weight given to the opinions of . . . nontreating sources." *Id.* § 416.927(e)(2)(ii);[3] *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 837 n.8 (6th Cir. 2016)

---

[2] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as the treating source or treating physician rule. As Plaintiff's application was filed and the ALJ's decision rendered before March 27, 2017, the treating physician rule applies. *See id*. at *5861; *see also* 20 C.F.R. § 416.927. In addition, the Court cites and quotes to the version of 20 C.F.R. § 416.927 that was in effect at the time of the ALJ's decision. There are no substantive differences between the two statutes that would affect this memorandum and order. One particular difference is addressed in note 3, below.

[3] The current version of 20 C.F.R. § 416.927, which became effective March 27, 2017, well after the ALJ's decision, requires every opinion be evaluated but it does not expressly state that an explanation of the weight given to a consultative examiner is required. In updating the regulations, the SSA clearly intended to expand the explanation requirements for ALJs regarding weight assigned to medical opinions. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, at *5844 ("[W]e are revising our rules to state that our adjudicators will articulate how they consider medical opinions from all medical sources . . . ."). Accordingly, in modifying the text of 20 C.F.R. § 416.927, there is no reason to believe the SSA intended to eliminate the existing explanation requirement for claims filed prior to March 27, 2017.

(citing 20 C.F.R. § 404.1527(c) & (e)(2)(ii), which are the relevant regulations on the treating physician issue for disability insurance benefits claims); *Sommer v. Astrue*, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency." (citation omitted)). Nevertheless, the ALJ is not required to discuss every factor in detail, or do anything more than consider the factors and explain the weight assigned to the opinion. 20 C.F.R. § 416.927(c), (e)(2)(ii).

Plaintiff argues the ALJ failed to adequately explain his decision to assign Dr. Wiener's opinion "some weight." He argues this constitutes harmful error because Dr. Wiener's opinion, if fully credited, "would lead to a finding of disability based on Plaintiff's mental limitations." [Doc. 17 at Page ID # 469]. His position is that because "the ALJ improperly dismissed probative evidence of disabling limitations in Dr. Wiener's opinion without justification, the RFC is not supported by substantial evidence." [*Id.* at 470].

The ALJ explicitly considered several factors—Dr. Wiener's practice specialty, that she was a one-time consultative examiner, and that her opinion was "vague," which goes to supportability (Tr. 17). Plaintiff's contention that the ALJ failed to consider the relevant factors is therefore incorrect. The ALJ also noted that some of Dr. Wiener's observations, such as Plaintiff's "ability to complete one and two-step tasks during the psychological consultative examination," supported the opinion of the non-examining Disability Determination Services ("DDS") psychological consultant, Allen Carter PhD, which was not quite as restrictive as Dr. Wiener's opinion (Tr. 17). Dr. Carter found Plaintiff "would have difficulty understanding and

remembering complex instructions" but "is able to understand and remember simple instructions," and "would fare best in a simple, repetitive, predictable work environment." (Tr. 148).

Plaintiff argues the ALJ's primary criticism of Dr. Wiener's opinion—that it is "vague"—is not supported by substantial evidence, but the ALJ's characterization is reasonable. Dr. Wiener finds Plaintiff had "adequate social skills," but "*could* be" precluded from establishing and maintaining "meaningful and productive relationships" with his coworkers and supervisors (Tr. 361). What is a meaningful and productive relationship in this context? Can Plaintiff still occasionally interact with coworkers and supervisors but not the public, as the ALJ found, without having a "meaningful" relationship with them? Dr. Wiener also finds Plaintiff's memory is only "mildly impaired," which would cause his work pace to be "slower," and "would likely interfere with sustained efforts or with independent completion of work related tasks." (Tr. 362). How much slower? How much interference? Does independent completion of work mean no interaction at all with a supervisor? These are reasonable questions when a person's memory is only "mildly impaired." As for the rest of Dr. Wiener's opinion, the ALJ essentially adopts it into the RFC—simple and routine work that requires no interaction with the public and not more than occasional interaction with supervisors and coworkers.

Plaintiff also faults the ALJ for not specifically discussing the portion of Dr. Wiener's opinion concerning Plaintiff's limitations "regarding interactions with coworkers and supervisors, and independence." [Doc. 17 at Page ID # 469]. However, the ALJ is not required to discuss each piece of evidence in the decision, "so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006)). The ALJ

clearly read and considered Dr. Wiener's entire opinion. He adopted many mental limitations consistent with it and discussed it.

Finally, Plaintiff argues the hypothetical question posed to the VE (which reflects the RFC), "does not account for Plaintiff's limitations in stress, interactions with coworkers or supervisors, or pace," which Plaintiff claims are supported by Dr. Wiener's opinion [Doc. 17 at Page ID # 470]. But the ALJ included the mental health limitations he found credible, which is all he was required to do. *Helton v. Berryhill*, No. 7:18-cv-008-JMH, 2018 WL 5986747, at *6 (E.D. Ky. Nov. 14, 2018) ("Additionally, '[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'" (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (alteration in original)). The ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record, including Dr. Carter's opinion. At the initial level of consideration of Plaintiff's disability claim, Dr. Carter found Plaintiff had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, with the following explanation:

> 1. Claimant would have difficulty understanding and remembering complex instructions but claimant is able to understand and remember simple instructions.
>
> 2. Claimant will have intermittent difficulty carrying out detailed instruction. [He] would fare best in a simple, repetitive, predictable work environment.
>
> 3. Claimant has moderate reduction in ability to interact with large groups and coworkers but [he] is able to interact with supervisors appropriately.
>
> 4. Claimant has reduced ability to adjust to changes in [a] work like setting but there is not a substantial loss.

(Tr. 143, 148). At the reconsideration level, the non-examining DDS psychological consultant, Celine Payne-Gair, PhD, also found Plaintiff had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, elaborating:

> The claimant can understand and remember simple instructions.
>
> The claimant can complete simple tasks, maintain attention and concentration for periods of at least two hours, complete an 8hr workday and 40 hr workweek w/o significant py-related interruptions, and perform at a consistent pace.
>
> The claimant can relate appropriately to peers and supervisors.
>
> The claimant can adapt to routine change in the workplace.

(Tr. 165, 170).

The medical opinions in this case—even Dr. Wiener's to an extent—reflect Plaintiff may have moderate limitations in performing complicated tasks or maintaining "meaningful" relationships, but he is capable of performing simple work without special supervision and could communicate adequately with his supervisors.

The weight assigned to Dr. Wiener's opinion is the only sentence-four challenge Plaintiff's makes to the ALJ's assessment of his RFC. The Court finds the ALJ adequately articulated the reasons behind his decision to assign only "some weight" to Dr. Wiener's opinion, and the ALJ's stated reasons are supported by substantial evidence. The Court concludes the RFC assessment is otherwise supported by substantial evidence. Plaintiff's motion will be denied in this regard.

### C. Plaintiff's Sentence-Six Argument

Plaintiff also argues he presented evidence to the Appeals Council which requires a sentence-six remand; specifically, a "Pain Evaluation" form and a "Physical Capabilities Evaluation" form completed by Anurag Sahu, M.D., on February 7, 2017[4] [Tr. 128-33]. Plaintiff describes Dr. Sahu as his "treating cardiologist," and notes Dr. Sahu works at the Emory University Adult Congenital Heart Center in Atlanta, Georgia [Doc. 17 at Page ID # 472]. As the Commissioner points out, however, when Dr. Sahu completed the forms he February 2017, he had only seen Plaintiff once, on September 26, 2016, and Plaintiff was not scheduled to see him again until March 2, 2017[5] (Tr. 131). Plaintiff was referred to Dr. Sahu's office by doctors at the Harbin Clinic in Rome, Georgia, after he presented complaining of shortness of breath (Tr. 27-28, 57-58). In any event, Dr. Sahu opined Plaintiff experienced "back spasms" and "chest pain" that would interfere with "attention and concentration needed to perform even simple work tasks" for one- to two-thirds of an eight-hour work day (Tr. 128). Dr. Sahu noted Plaintiff reported experiencing these symptoms for years. When asked if Plaintiff was credible, Dr. Sahu wrote: "This is a new patient, but yes." (Tr. 128).

As for his functional limitations, Dr. Sahu found Plaintiff could only work for up to three hours per day (sitting for up to two hours in 30 minute increments and standing/walking for up to

---

[4] The Appeals Council reviewed the evidence but denied Plaintiff's request for review. The notice states: "You submitted medical records from Anurag Sahu, MD dated February 7, 2017 (8 pages). The Administrative Law Judge decided your case through November 23, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 23, 2016." (Tr. 2).

[5] Plaintiff received treatment at a clinic or hospital affiliated with Emory University when he was a child, but apparently not with Dr. Sahu (Tr. 28).

14

one hour in 30 minute increments); during that time, he could lift up to 10 pounds occasionally and five pounds frequently; he could never climb or crawl, and only occasionally bend, squat, reach, and stoop; he would need the ability to "rest, recline or lay down" at his discretion; and he would require restroom breaks every 30 minutes due to his diuretic medication (Tr. 129-31). Dr. Sahu opined that Plaintiff's condition is permanent; however, when asked to identify the "earliest date [Plaintiff's] condition was at the level of severity" indicated on the form, Dr. Sahu wrote: "Difficult to say, as he has been out of care for several years & that has not helped. More than likely, it has been a couple of years." (Tr. 131). Dr. Sahu did not identify any particular condition or impairment other than the "back spasms" and "chest pain" (Tr. 132), and he did not cite any treatment notes, test results or other findings he relied on in forming his opinion. As far as the Court can tell, the administrative record does not contain any such records from Dr. Sahu, and the parties cited to none.

While the Court "cannot reverse the ALJ's decision based on evidence not submitted to the ALJ," the Court can "remand a case based on new evidence." *Sutton v. Soc. Sec. Admin.*, No. 09-2288, 2011 WL 9482974, at *3 (6th Cir. Apr. 5, 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)) (other citation omitted). This is referred to as a sentence-six remand, because the Court's authority for doing so lies in the sixth sentence of 42 U.S.C. § 405(g).

A sentence-six remand is appropriate "only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ.'" *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)) (other internal quotations marks omitted); *see also* 42 U.S.C. §

405(g) ("The court may . . . remand the case to the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

"New" evidence is that which was "not in existence or available to the claimant at the time of the administrative proceeding . . . ." *Schmiedebusch*, 536 F. App'x at 647 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)) (internal quotation marks omitted). Evidence is material if it creates "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)); *see also Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 422 (6th Cir. 2014) (citation omitted) ("Evidence is material only if there is a reasonable probability that it would have affected the outcome of the proceeding."). "'Good cause' is demonstrated by 'a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.'" *Johnson*, 535 F. App'x at 509 (quoting *Foster*, 279 F.3d at 357). "The claimant bears the burden of showing that all three requirements have been met in order to obtain a remand." *Sutton*, 2011 WL 9482974, at *3 (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009)).

Dr. Sahu's opinions are new, because they did not yet exist when the ALJ issued his decision. Plaintiff argues they are "material," because Dr. Sahu is the only treating physician to provide any opinions on Plaintiff's limitations. However, as explained above, this argument is without merit because Dr. Sahu had only seen Plaintiff one time when he rendered his opinions, and the record does not reflect any treatment by Dr. Sahu at all. *See Kornecky*, 167 F. App'x at

16

506 ("Kornecky cites no authority where a federal court has found a source to be a treating source after only one visit. However, a plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship." (collecting cases)). Plaintiff also offers the following conclusory argument about materiality:

> [Dr. Sahu's] opinion is critical in determining whether or not Plaintiff's condition would preclude him from work, as Dr. Sahu is [a] treating cardiac specialist with the Emory Adult Congenital Heart Center. An opinion from a treating cardiac specialist is substantial in light of Plaintiff's severe heart condition, and the other opinions in the record, which include those from consultative examiners and State agency physicians.

[Doc. 17 at Page ID # 472 (citation to Tr. omitted)]. This argument fails. Dr. Sahu may be a distinguished cardiologist, but his reputation alone is not sufficient for the Court to find a reasonable probability the outcome of Plaintiff's administrative hearing would be any different if Dr. Sahu's opinions were available to the ALJ. Again, Dr. Sahu's opinions are not accompanied by any tests, treatment notes, or any objective findings. The record reflects that Plaintiff did not receive treatment or take medication for his cardiac issues from 2007 until 2016[6] (Tr. 57, 131). When he did appear at the Harbin Clinic in 2016 (before seeing Dr. Sahu), Dr. Kipp Slicker observed that, "[o]verall, he is doing well and he has minimal complaints of exertional dyspnea without chest pain, syncope, pre-syncope or palpitations." (Tr. 57). Moreover, while Dr. Sahu found Plaintiff could not sit for more than thirty minutes up to two hours per day, Plaintiff himself

---

[6] The Court acknowledges Plaintiff's testimony that he has not had insurance to see specialists since 2007 (Tr. 33-34). Plaintiff did go to the Floyd Medical Center emergency room in August 2014 for chest pain (Tr. 365). He was given an x-ray, and doctors found his condition did "not seem serious" at that time (Tr. 367). The x-ray showed "[n]o signs of congestive heart failure, consolidated airspace disease or other acute process." (Tr. 383). He was advised to rest, avoid excess caffeine, alcohol, or stimulants, and to take "any prescribed medicine as directed." (Tr. 389, 391).

testified he had no problems with sitting or with standing (Tr. 36).

Accordingly, the Court finds Plaintiff has failed to establish the opinions are material for purposes of a sentence-six remand. *See Foster*, 279 F.3d at 358 ("Given the lack of evidence in support of Dr. Lewis's diagnosis, Foster has not established that there was 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with [this] evidence.'" (quoting *Sizemore*, 865 F.2d 709 at 711)).

Even if the opinions are material, Plaintiff has failed to show good cause for having failed to obtain them sooner and present them to the ALJ. Plaintiff's only argument on this point is that he did not receive the opinion until February 2017, and the ALJ "made his decision on November 23, 2016, thus it was months before Plaintiff could have even possibly obtained the opinion." [Doc. 17 at Page ID # 472]. But the only time Plaintiff saw Dr. Sahu was on September 26, 2016, nearly a month before the ALJ issued his decision. Plaintiff does not explain whether he attempted to get the opinions sooner, or why he received them in February 2017 when he had not seen Dr. Sahu in over four months.

Plaintiff has failed to show there was a reasonable possibility the ALJ "would have reached a different disposition of the disability claim if presented with" Dr. Sahu's opinions. Plaintiff's motion will be denied in this regard.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

1) Plaintiff's motion for summary judgment [Doc. 16] is **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 22] is **GRANTED**; and

3) The Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

                                                           s/ *Susan K. Lee*
                                                           SUSAN K. LEE
                                                           UNITED STATES MAGISTRATE JUDGE